J-S46011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON MICHAEL FRAZIER | : | |
| | : | |
| Appellant | : | No. 290 WDA 2025 |

Appeal from the PCRA Order Entered February 14, 2025
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0011969-2000

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:               **FILED:  January 21, 2026**

Jason Michael Frazier appeals *pro se* from the order that dismissed as untimely his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

Appellant was the target of a shooting in Pittsburgh on July 3, 2000, for which he blamed individuals associated with Kelley Street.  The next day, bystander Sherdina Jones was shot and killed near the 7500 block of Kelley Street.  Appellant initially told police that he had not been in Pittsburgh on the night of the latter shooting.  Following his arrest and confinement in the Allegheny County Jail, Appellant requested, through his girlfriend, to speak to Pittsburgh Police Detectives Dennis Logan and  Richard McDonald.  During the

interview on the following day, after being informed of his *Miranda* rights,[1] Appellant conceded that he had been at the scene of the shooting, having taken a sawed-off .22 rifle with him and returning fire upon hearing shots. Appellant quickly changed his story again and admitted that he had initiated the shooting. He signed notes memorializing the confession in five separate places, and then reiterated it in an audio recording. After the trial court denied his subsequent motion to suppress his statements as involuntary, Appellant proceeded to a jury trial in January 2001, at which Appellant's confession was admitted into evidence. Detectives Logan and McDonald both testified, each denying having coerced Appellant's confession in any way.

The jury convicted Appellant of first-degree murder, and the court immediately sentenced him to life imprisonment without the possibility of parole. On direct appeal, this Court, *inter alia*, affirmed the denial of Appellant's suppression motion, finding no record support for his claims that the trial court erred in ruling his confession voluntary. *See Commonwealth v. Frazier*, 821 A.2d 132 (Pa.Super. 2003) (unpublished memorandum at 9-10*), appeal denied*, 829 A.2d 1156 (Pa. 2003). We also held that the Commonwealth sufficiently disproved his claim of self-defense, and that his claim of after-discovered evidence founded upon affidavits of witnesses to the shooting was not properly before us at that juncture. *Id*. (unpublished

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

memorandum at 4-5). We summarized the ensuing procedural history as follows:

> Since [then, Appellant] has filed multiple PCRA petitions seeking relief based on after-discovered evidence. In his first PCRA petition, [Appellant] sought a new trial based on after-discovered evidence of six witnesses who corroborated [his] defense that other men fired at his vehicle, causing him to fear for his life, before [he] fired back. We concluded that the affidavits were not timely obtained through due diligence, were merely corroborative of the self-defense theory he presented at trial, and would not have altered the outcome of the case.
>
> In his second PCRA petition, [Appellant] presented two additional affidavits. One of the affidavits was from a new witness who identified Paul Pierce as the individual who first fired upon [Appellant]'s vehicle. The affidavit further alleged that Pierce, who was by that time deceased, had told the affiant he had killed the victim. The second affidavit was produced by a witness who had submitted affidavits in support of [Appellant]'s first PCRA petition. We held that [Appellant] had not exercised due diligence with respect to either witness and that the affidavits merely rehashed facts regarding self-defense previously known to [Appellant].
>
> In his third PCRA petition, [Appellant] once again submitted affidavits from three witnesses who averred that Pierce had confessed to shooting the victim and two additional witnesses who allegedly saw Pierce shoot at [Appellant]'s vehicle. We concluded that [Appellant] had not exercised due diligence in uncovering the first three witnesses. With regard to the final two witnesses, we held that [Appellant] had timely presented their affidavits but was nonetheless not entitled to relief because the affidavits were again merely cumulative of his self-defense claim and would not have altered the result of the trial.
>
> In [his fourth] petition, [Appellant] again proffer[ed] affidavits from alleged witnesses to the shooting: Jesse Lumberger and James Hill. The affidavits differed from the prior witness affidavits in that they averred that after [Appellant] fled the scene, Pierce walked over to the victim and fired two shots into her abdomen as she lay on the ground. The PCRA court held an evidentiary

hearing at which Lumberger and Hill testified, consistent with their affidavits[.]

***Commonwealth v. Frazier***, 297 A.3d 731 (Pa.Super. 2023) (cleaned up), *appeal denied*, 304 A.3d 333 (Pa. 2023). The PCRA court dismissed the petition upon finding the witnesses incredible, and this Court affirmed the denial of relief. ***Id***.

Appellant filed the petition at issue in the instant appeal in January 2024, roughly twenty years after his judgment of sentence became final. He premised his latest claim upon a discovery he made in October 2023 in "a pile of caselaw sitting on the table on his housing unit, at SCI-Somerset[.]" PCRA Petition, 1/12/24, at 4.1. Specifically, Appellant learned from reading ***Commonwealth v. Pinson***, 174 A.3d 54 (Pa.Super. 2017) (unpublished memorandum), that Detectives Logan and McDonald had been sued in 2000 by Clyde Manns for civil rights violations during a homicide interrogation.[2]

---

[2] As this Court summarized in another appeal:

> In March 2000, a lawsuit was filed against Detective[s McDonald and] Logan alleging that during an interrogation, [they] violated the constitutional rights of a homicide suspect. The plaintiff referenced a 1999 document from the Department of Public Safety, Office of Municipal Investigations which listed three complaints against Detective Logan, and alleged that Detective[s McDonald and] Logan engaged in coercive interrogation techniques against him. A federal jury awarded the plaintiff $25,000 in damages in June 2002. A new trial was subsequently granted, and after a settlement conference, the parties entered into a stipulation dismissing the case with prejudice in November 2002.

*(Footnote Continued Next Page)*

Appellant asked his family to search the internet for newspaper articles about the matter, and they found a June 2002 TribLIVE article about Mr. Manns's case that also referenced "dozens of federal civil-rights lawsuits that alleged police misconduct" which "spawned a federal consent decree over Pittsburgh police" and settled earlier that month. *See* PCRA Petition, 1/12/24, at Exhibit 3. Appellant alleged he exercised due diligence in discovering this new fact because, before he "luckily came across the *Pinson* case[,] he had no reason to believe that the Commonwealth withheld this material impeachment evidence in violation of *Brady* [*v. Maryland*, 373 U.S. 83 (1963)]." PCRA Petition, 1/12/24, at 3.3.

The PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition because it failed to satisfy any of the exceptions to the PCRA's one-year time bar. After some hiccups resulting from filings crossing in the mail, Appellant responded to the Rule 907 notice through an amended PCRA petition. Therein, he additionally asserted the governmental interference timeliness exception codified at 42 Pa.C.S. § 9545(b)(1)(i), citing federal cases such as *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263 (3d Cir. 2016) (*en banc*), and *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 290 (3d Cir. 2021),

_____

*Commonwealth v. Boyer*, 323 A.3d 182, 2024 WL 2815035, at *2 (Pa.Super. 2024) (non-precedential decision) (cleaned up).

concerning the timeliness and due diligence requirements of *habeas corpus* petitions pursuant to 28 U.S.C. § 2244(d)(1).

Unpersuaded, the court dismissed the petition by order entered February 14, 2025. This timely appeal followed. The PCRA court authored a Pa.R.A.P. 1925(a) opinion explaining its ruling without requiring Appellant to file a Rule 1925(b) statement. He presents the following questions for our determination:

> I. Whether the PCRA court erred in summarily dismissing [Appellant]'s *pro se* PCRA petition as untimely. And whether the PCRA court erred in denying an evidentiary hearing and other relief on a petition which raised numerous issues of material fact based upon the prosecution's withholding of material impeachment evidence favorable to [Appellant], where [he] relied on the prosecutor's confirmation that they had disclosed all impeachment evidence, pursuant [to] **Brady**, **Dennis**, and **Bracey**.
>
> II. Whether the PCRA court erred by relying on statement of facts not supported by the record and previously corrected by this honorable Court.

Appellant's brief at 4 (cleaned up).

We begin with the governing law. This Court will "review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

- 6 -

It is well-settled "that the timeliness of a PCRA petition is jurisdictional and that if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief." **Commonwealth v. Fantauzzi**, 275 A.3d 986, 994 (Pa.Super. 2022). Any PCRA petition must be filed within one year of the date that the underlying judgment of sentence became final unless the petitioner pleads and offers to prove one of the following enumerated timeliness exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Further, a petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant acknowledges that his petition, filed approximately twenty years after his sentence became final, was facially untimely. He invoked both subsections (i) and (ii) of § 9545(b)(1) as bases for the court's jurisdiction over his **Brady** claim. As our Supreme Court has explained:

> Although a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove the

- 7 -

failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence. Section 9545(b)(1)(ii)'s exception requires the facts upon which the **Brady** claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence. . . . [T]he exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the facts upon which such a claim is predicated must not have been known to [the] appellant, nor could they have been ascertained by due diligence.

**Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008). Thus, neither exception could confer jurisdiction for the court to consider the merits of Appellant's **Brady** claim unless he pled and offered to prove that he exercised due diligence in discovering the alleged **Brady** material.

The PCRA court noted that the lawsuit against the detectives upon which Appellant premises his **Brady** claim was filed in 2000, which predates his trial, and concluded in 2002, which was before his judgment of sentence became final. Further, "[t]here were articles in the local newspapers about the lawsuit which mentioned both detectives by name[,]" such as the one from June 2002 that Appellant attached to the instant PCRA petition after his family located through a simple internet search. **See** PCRA Court Opinion, 4/1/25, at 2. Therefore, the PCRA court concluded that, "[i]f [Appellant] had exercised due diligence, as required by the exception, he would have unearthed details of the lawsuit at some point over the past more than twenty years." **Id**.

Citing the federal court decisions in **Bracey** and **Dennis**, Appellant argues that, absent any notice of a possible **Brady** violation, he had no reason

to doubt that the Commonwealth fulfilled its disclosure obligations such that "due diligence d[id] not require him to search for such material." Appellant's brief at 18-19. However, as our High Court has noted:

> [T]he Third Circuit's pronouncement in **Dennis** that **Brady** does not include a due diligence requirement is in apparent conflict with case law from this Court that there is no **Brady** violation where a defendant could have uncovered the undisclosed evidence with reasonable diligence. This apparent conflict is not directly before us . . . . We note, however, that while this Court is clearly bound by the holdings of the United States Supreme Court on issues of federal law, we are not bound by the holdings of the Third Circuit on such issues.

**Commonwealth v. Conforti**, 303 A.3d 715, 726 n.8 (Pa. 2023) (cleaned up).

This Court is bound to follow Pennsylvania Supreme Court precedent, not any contrary Third Circuit decisions. Applying the due diligence mandates discussed above, we discern no abuse of discretion or error of law in the PCRA court's finding that Appellant did not meet his burden. Indeed, in the **Pinson** memorandum he happened upon in prison, Appellant would have read that in pursuing relief based upon Detective Logan's alleged misconduct, Pinson relied on: (1) a June 2002 newspaper article about it in a PCRA petition that was the subject of a 2009 appeal to this Court; and (2) later information he received about the civil rights case through an open records request upon which he premised a 2015 PCRA petition.

Plainly, the facts Appellant discovered were readily available through the exercise of due diligence many years before he filed his 2024 petition.

Moreover, Appellant offered no explanation as to how the government interfered with his ability to bring the claim earlier. *Cf. Commonwealth v. Williams*, 168 A.3d 97, 106 (Pa. 2017) (holding the petitioner satisfied the governmental interference exception where due diligence would not have earlier uncovered *Brady* material included in the prosecution's files, but not provided to the defense before the 1986 trial, because the petitioner "had no access to the Commonwealth's files until [a witness] came forward in 2012 with his affidavits, which resulted in the discovery orders that finally revealed the Commonwealth's suppression of evidence").

Thus, Appellant's 2024 PCRA petition was untimely, and he failed to establish that a timeliness exception applied. Since the PCRA court lacked jurisdiction to entertain the merits of his *Brady* claim, it properly dismissed his petition.

In his remaining question, Appellant's attacks the PCRA court's recitation in its opinion of the facts underlying his convictions. In particular, he disputes the court's representations that all four bullets that were recovered from the victim's body were found in her stomach and matched Appellant's gun, and insists that the trial testimony was that police overheard him say "'Kelly Street is responsible for this' and 'Somebody is going to pay for this'" to an unknown person, not that he made those statements directly to police. *See* Appellant's brief at 28-29. As any inaccuracies in this regard

have no bearing on the court's jurisdiction to adjudicate the PCRA petition, any error in this regard would be harmless.

In sum, because Appellant has failed to convince us both that the PCRA court erred and that relief is due, we affirm the court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  1/21/2026